## BECHTEL et al. v. STILLWATER MILLING CO. et al.

### No. 313 Civil.

District Court, W. D. Oklahoma.

June 25, 1940.

Ernest F. Jenkins, of Stillwater, Okl., and Charles H. Garnett, of Oklahoma City, Okl., for plaintiffs.

A. R. Swank, of Stillwater, Okl., for defendants.

VAUGHT, District Judge.

This is an action filed under the Act of Congress termed Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

The complaint alleges that the three plaintiffs were employed by the defendants in the capacity of truck drivers; that the milling company manufactured flour, meal and other products from grain, for human consumption and for feed for livestock; that the products of the mill were sold and delivered both within and without the state of Oklahoma; that the trucks were maintained by the milling company for the purpose of transporting the products of said company from the mill to the sale destinations.

That from the 24th day of October, 1938, the effective date of said Act, up to and including the 4th of November, 1939, the plaintiffs Harold Bechtel and Sherman Ferrell worked a total of 47 weeks and in each of said weeks worked more than 44 hours, or a grand total of 4,410 hours for Ferrell and 4,319 for Bechtel, without receiving any overtime for said employment and said service; that the plaintiff Bechtel received fifty cents per hour for 44 hours worked, or a total of 2,068 hours during said 47 weeks, but for the overtime, which is the difference between 2,068 hours and 4,319 hours worked, or 2,251 hours in excess of 44 hours per week, the plaintiff Bechtel received no compensation whatever therefor; that under the minimum wage and maximum hours prescribed in the Fair Labor Standards Act of 1938 and the provisions therein for pay for overtime worked, the amount due the plaintiff Bechtel from the defendants, and each of them, on the facts herein set forth, is $1,688.25. The plaintiff Bechtel has demanded payment of the same from the defendants, and each of them, and payment thereon has been refused. The defendants, and each of them, are also liable and indebted to the plaintiff Bechtel in the additional sum of $1,688.25 as liquidated damages.

That the plaintiff Ferrell received fifty cents per hour for 44 hours worked per week, or a total of 2,068 hours during said 47 weeks, but for the overtime, which is the difference between 2,068 hours and 4,-410 hours worked, or 2,342 hours in excess of 44 hours per week, the plaintiff Ferrell received no compensation whatever therefor; that under the Fair Labor Standards Act, the amount due the plaintiff Ferrell from the defendants, and each of them, on the facts herein set forth, is $1,756.50. The plaintiff Ferrell has demanded payment of the same from the defendants, and each of them, and payment thereon has been refused. The defendants, and each of them, are also liable and indebted to the plaintiff Ferrell in the additional sum of $1,756.-50 as liquidated damages.

That the plaintiff R. J. Williamson worked a total of 52 weeks, and in each of said weeks worked more than 44 hours, or a grand total of 5,063½ hours during said 52 weeks, without receiving any overtime for said employment and said service; that said plaintiff Williamson received fifty cents per hour for 44 hours per week worked, or a total of 2,288 hours during said 52 weeks, but for the overtime of 2,775½ hours, which is the difference between 5,-063½ and 2,288 hours, the plaintiff Williamson received no compensation whatever therefor; that under the minimum wage and maximum hours prescribed in said Act, the defendants are indebted to the said Williamson in the sum of $2,081.62½ and also an additional sum of $2,081.62½ as liquidated damages, for which sums the plaintiff asks judgment.

The defendants have each filed a demurrer to the amended complaint of the plaintiffs and aver said amended complaint fails to state facts sufficient to constitute a cause of action in favor of the plaintiffs, or either of them, as against the defendants.

The demurrers will be treated as motions to dismiss. The basis of the motions to dismiss is that the Fair Labor Standards Act is not applicable to this case.

Under the Motor Carrier Act of August 9, 1935, 49 Stat. 543, 49 U.S.C.A. § 304, it is provided, under Powers and Duties of Commission, referring to the Interstate Commerce Commission:

"Sec. 204 [§ 304] (a) It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this part [chapter], and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this part

[chapter], and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term 'motor carrier' shall be construed to include private carriers of property by motor vehicle in the administration of sections 204 [304] (d) and (e), 205 [305], 220 [320], 221 [321], 222 [322] (a), (b), (d), (f), and (g), and 224 [324 of this chapter]."

It will be noted that under paragraph (3) of subsection (a), supra, it shall be the duty of the Interstate Commerce Commission to establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. This Act became effective in 1935.

The Fair Labor Standards Act of June 25, 1938, after setting out in sections 6 and 7, 29 U.S.C.A. §§ 206, 207, the requirements exacted of every employer, follows with certain exemptions in section 13 (b), 29 U.S.C.A. § 213(b), to-wit: "The provisions of section 7 [207] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 [304 of Title 49] of the Motor Carrier Act, 1935; or (2) any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."

The defendants contend that the plaintiffs were employed by the defendant company as a private carrier and therefore the power to prescribe qualifications and maximum hours of service of employees is exclusively within the jurisdiction of the Interstate Commerce Commission.

The plaintiffs contend that the Interstate Commerce Commission has never exercised this power and has not found it necessary to make reasonable requirements to promote safety of operation and to prescribe maximum hours of employees and standards of equipment and, since the Interstate Commerce Commission has failed to exercise the power granted to it by Congress, that such power does not exist, and that under the Fair Labor Standards Act the administrator of the act has the power and has declared that the exemption above referred to and provided in the act ceases to be applicable.

The Motor Carrier Act was enacted by Congress on August 9, 1935, and certain powers were granted to the Interstate Commerce Commission, and the Act provides that it shall be the duty of the commission to establish for private carriers of property by motor vehicle reasonable requirements to *promote safety of operation* and to *prescribe maximum hours of service of employees,* "if need therefor is found."

█ █ Certainly, the failure of the Interstate Commerce Commission to prescribe maximum hours of service of employees does not divest the commission of the power granted to it by Congress. Its failure to so prescribe maximum hours of service might be due to the fact that the commission did not find that it was necessary. The expression, "if need therefor is found," is a limitation on the commission in prescribing maximum hours of service but is not a limitation on the power granted by Congress to the commission.

If, therefore, the power to regulate private carriers of property by motor vehicle and to prescribe maximum hours of service of employees was granted to the Interstate Commerce Commission by Congress, that power vests in the commission. The Fair Labor Standards Act, § 13(b), as above quoted, provides that section 7 is not applicable with respect to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935.

In American Trucking Associations, Inc., et al. v. United States et al. (Andrews, Administrator of Wage and Hour Division of United States Department of Labor, Intervener), 31 F.Supp. 35, 38, in a three-judge case, in the United States District Court for the District of Columbia, both of the acts involved in this case were discussed at length and that court said:

"And it is easy to see that stabilization of labor conditions as applied to this industry is an important, and indeed a nec-

essary, part of the establishment of rates and general business regulation, matters as to which the Commission admittedly is expert, and these objectives appear as part and parcel of the purposes of the legislation. In this aspect, it is reasonable to conclude that Congress had them in mind when later, upon the passage of the Fair Labor Standards Act, it provided specifically that Sec. 7 thereof—which establishes maximum hours of service—should not apply 'with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 (304 of Title 49) of the Motor Carrier Act, 1935, or (2) any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act.' 29 U.S.C. A. § 213(b). The necessity of separate provisions for the exemption of employees of the two classes of carriers is manifest. There are no private carriers by rail subject to the Commission's jurisdiction. Congress, therefore, used inclusive language as to the employees of railroads. There are, however, many private motor carriers who are subject to a limited regulation by the Commission, and this is true for reasons which we have already explained. Their employees not subject to the jurisdiction of the Commission would, by the use of the language employed in the case of railroads, have been left outside of the provisions of the Fair Labor Standards Act. It was obviously the recognition of this fact alone that induced the use of different language in each instance.

"In the view we take, the language of the disputed section is so plain as to permit only one interpretation, and we find nothing in the Act as a whole which can with any assurance be said to lead to a different result. The circumstances under which the section was placed in the bill may possibly have created a situation not contemplated by its sponsors, but to say that this is true would be pure speculation, in which we have no right to indulge and upon which we can base no conclusion. We are, therefore, obliged to hold that the Commission was mistaken in limiting its powers to the drivers of trucks and buses."

The above case relates to the power of the Interstate Commerce Commission under the Motor Carrier Act of 1935 to establish reasonable requirements with respect to qualifications and maximum hours

of service of employees of motor carriers *other than employees whose duties affect safety of operation.*

In that case the question presented was whether or not, under the Motor Carrier Act of 1935, the Interstate Commerce Commission had jurisdiction and power with respect to the qualifications and maximum hours of service of employees engaged in office work and in clerical capacity. The case went to the Supreme Court of the United States and on May 27, 1940, in United States of America, Interstate Commerce Commission et al. v. American Trucking Associations, Inc., et al., 60 S. Ct. 1059, 1067, 84 L.Ed. ——, our highest court construed the Motor Carrier Act as well as the Fair Labor Standards Act with respect to section 204(a) of the Motor Carrier Act, 1935, and section 13(b) of the Fair Labor Standards Act. In this opinion the Supreme Court reversed the District Court for the District of Columbia, and said:

"The Commission and the Wage and Hour Division, as we have said, have both interpreted Section 204(a) as relating solely to safety of operation. In any case such interpretations are entitled to great weight. This is peculiarly true here where the interpretations involve 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.' Furthermore, the Commission's interpretation gains much persuasiveness from the fact that it was the Commission which suggested the provisions' enactment to Congress.

"It is important to remember that the Commission has three times concluded that its authority was limited to securing safety of operation. The first interpretation was made on December 29, 1937, when the Commission stated: ' * * * until the Congress shall have given us a more particular and definite command in the premises, we shall limit our regulations concerning maximum hours of service to those employees whose functions in the operation of motor vehicles make such regulations desirable because of safety considerations.' This expression was half a year old when Congress enacted the Fair Labor Standards Act with the exemption of Section 13(b) (1)."

After a careful discussion of the two sections of the two Acts, the court said: "*It is evident that the exempted vehicles*

*and operators include common, contract and private carriers.* It seems equally evident that where these vehicles or operators were common or contract carriers, it was not intended by Congress to give the Commission power to regulate the qualifications and hours of service of employees, other than those concerned with the safety of operations."

While it is true that the above case involved only subsections 1 and 2 of section 204(a), nevertheless both courts, in discussing section 204(a) and section 13(b), refered to *common, contract* and *private* carriers and the Supreme Court in its opinion, as above stated, referred to *private* carriers as being within the exemption of section 13(b) of the Fair Labor Standards Act.

This court, therefore, is of the opinion that the power granted to the Interstate Commerce Commission is an exclusive power and by the exemption in the Fair Labor Standards Act, Congress meant to recognize the power that had been granted to the Interstate Commerce Commission.

The plaintiffs in this case were all truck drivers, according to the complaint, and, therefore, they came within the classification of employees concerned with "the safety of operations."

The motions to dismiss will be sustained and an exception allowed.