**GAVRIL et al. v. KRAFT CHEESE CO.** (FLEMING, Administrator of Wage and Hour Division, United States Department of Labor, Intervenor).

No. 2509.

District Court, N. D. Illinois, E. D.

Nov. 27, 1941.

Frederick A. Smith, of Chicago, Ill., for plaintiff.

Nicholson, Snyder, Chadwell and Fagerburg, of Chicago, Ill., for defendant.

Gerald D. Reilly and Irving J. Levy, both of Washington, D. C., and Alex Elson and Lee K. Beznor, both of Chicago, Ill., for Administrator of Wage & Hour Division, Amicus Curiae.

CAMPBELL, District Judge.

This is a case brought by eleven former employees of the defendant company under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219 on behalf of themselves and all other employees similarly situated for the recovery of overtime compensation claimed by reason of alleged violation of Section 7 of the said Act, together with liquidated damages and reasonable attorney's fees.

Now before the Court, filed by the defendant are:

1. Motion for summary judgment.

2. Motion to dismiss complaint.

3. Motion to strike certain allegations from amended complaint.

4. Motion for more definite statement.

The first two motions will be considered together at this time since the defendant sets up the same grounds in support of each. These grounds are: first, that the plaintiffs were not engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act; second, that should it be decided that the plaintiffs were engaged in commerce within the meaning of the Fair Labor Standards Act, the said Act does not apply by reason of the exemption contained in Section 13(b).

With respect to the defendant's first ground for summary judgment or dismissal of the complaint, the Court has been furnished with the affidavits of Mr. Paul Vandiver and Mr. Sanger C. Lindbloom on behalf of the defendant and with the affidavit of Mr. George E. Simon on behalf of the plaintiffs. These affidavits reveal that the defendant company is engaged on a national scale in the manufacture and distribution at wholesale of cheese and other food products. That its distribution within the State of Illinois embraces products manufactured within the State and products manufactured outside of the State and shipped by the defendant to its warehouse within the State. That from the said warehouse products manufactured both within and without the State are subsequently transferred to branch warehouses from which branch warehouses the said products are then removed by so-called "driver-salesmen" to be sold to various retail grocers, delicatessen stores, restaurants and other retail dealers from the trucks of the defendant operated by the said "driver-salesmen". That all of the plaintiffs in this case were such "driver-salesmen" and each had assigned to him a certain route or territory within the City of Chicago.

Section 7 of the Fair Labor Standards Act limits the hours of work and defines the rate of overtime compensation for employees "engaged in commerce or in the production of goods for commerce". Thus the test to be applied to this or any other suit brought under the provisions of that act is whether or not the activities

of the individual employee brings such employee within that definition. In order to classify the activities of the employee however it is necessary also to consider the activities of the employer by whom he is engaged.

The defendant in its two briefs has cited many cases in an attempt to show that the activities of the defendant as described above do not constitute commerce within the meaning of the Fair Labor Standards Act and that therefore the plaintiffs cannot be engaged in commerce or in the production of goods for commerce. All of the cases cited by the defendant on this point have been studied and the Court finds that they are all easily distinguishable, at least factually, from the case at bar.

From a consideration of the legal principles enunciated in the cases cited by the defendant as well as in the cases cited by the plaintiffs and by the Amicus Curiae, together with a review of the Fair Labor Standards Act, and the proceedings in Congress at the time of the passage of that Act, the court is of the opinion that the activities of the defendant in this case constitute commerce within the meaning of that Act.

The defendant on page 13 of its original brief cites several other Acts of Congress wherein the phrase "engaged in commerce" is used and later cites cases interpreting the use of that phrase in some of those Acts. Among the other Acts of Congress which use this phrase the defendant lists the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., the Clayton Act, 15 U.S.C.A. § 12 et seq., and the Robinson Patman Act amending it, 15 U.S.C.A. § 13(a).

In the case of Federal Trade Commission v. Kraft-Phenix Cheese Corporation, Federal Trade Commission Complaint No. 2935, (Vol. 2 Federal Trade Regulation Service Par. 9061), The Federal Trade Commission in an opinion dismissing a proceeding against Kraft-Phenix Cheese Corporation said, among other things:

"Respondent Kraft-Phenix Cheese Corporation, individually and through subsidiaries, manufactures and distributes on a nationwide scale a line of processed cheese, package cheese and salad dressing. Respondent itself ships these products across state lines from factories to warehouses and the products are usually distributed from warehouses to retailers by truck by sales subsidiaries of respondent or independently owned jobbers and wholesalers. The distribution from the warehouses to retailers is usually within the confines of a single state, although in some cases this distribution crosses state lines. Respondent advertises its products extensively to the purchasing public and maintains a force of salesmen who contact retailers, most of whom buy Kraft products from independent jobbers. There is a continuous, uninterrupted flow and current of commerce in respondent's products from the factories to warehouses and from the warehouses over regularly established routes to retailers, whose identity is known in advance. The course of such commerce runs between, among, across, and within all the states of the United States and the District of Columbia.

"Considered in their character as interstate commerce, respondent's products, upon reaching the warehouse, do not become mixed with or a part of the general mass of property within the state in which such warehouse is located. On the contrary, such warehouses are clearing houses or distributing points, serving one function in respondent's system of making its perishable products available for sale by retailers to the ultimate consumer, the purchasing public. Respondent's advertising, its solicitation of retailers, and the facilities which it provides for the sale and distribution of its products to the retailer, are all vital and essential elements in the process of marketing these commodities. * * *

"The Commission concludes that respondent, * * * is engaged in interstate commerce and that the sales of its products to retailers are likewise made in the course of such commerce."

Kraft-Phenix Cheese Corporation was, as is disclosed by the title on the complaint filed herein, the name which the defendant in this case formerly used.

While it is quite possible that the activities of the defendant may have changed somewhat since the order of the Federal Trade Commission was entered on July 17, 1937, nevertheless, from the facts before Court on the affidavits heretofore referred to, the Court is of the opinion that the present activities of the defendant constitute commerce within the meaning of the Fair Labor Standards Act just as the Federal Trade Commission was of the opinion that similar activities of the defendant under its former name constituted commerce under the Clayton Act and the Robinson-Patman Amendment to that Act when it

describes such activities as "a continuous, uninterrupted flow and current of commerce in respondent's (defendant's) products from the factories to warehouses and from the warehouses over regularly established routes to retailers * * *."

It therefore follows that the plaintiffs in this case, being "driver-salesmen" engaged in the final phase of the interstate flow of the defendant's products (the delivery to the retailers), are engaged in commerce within the meaning of the Fair Labor Standards Act. Accordingly the first ground relied upon by defendant in its motion for summary judgment and in its motion to dismiss the complaint must fall.

Having determined that the plaintiffs are "engaged in commerce" within the meaning of the Fair Labor Standards Act, the Court will now consider the second ground of the defendant in support of its motions for summary judgment and to dismiss, namely, that the provisions of Section 13(b) (1) excluded the plaintiffs from the provisions of Section 7 of the same Act.

Section 13(b) (1) provides that the provisions of Section 7 shall not apply with respect to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204(a) (3) of the Motor Carrier Act, 49 U.S.C.A. § 304 (a) (3).

Section 204 of the Motor Carrier Act gives the Interstate Commerce Commission power to establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees. The provisions of the Motor Carrier Act are, of course, limited to carriers engaged in interstate or foreign commerce.

It is undisputed that the Interstate Commerce Commission under the power granted to it by Section 204 of the Motor Carrier Act has established by proper regulation the qualifications and maximum hours of service of drivers for private carriers, including so-called "driver-salesmen" such as these plaintiffs. I.C.C. ex parte orders MC-2, MC-3, effective October 15, 1940. (Page 26 defendant's original brief; page 37 plaintiffs' answering brief; page 18 defendant's reply brief.)

A review of the applicable provisions of the Fair Labor Standards Act and of the Motor Carrier Act, even in the light of the decision of the Supreme Court in the case of United States et al. v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, convinces the Court that the Interstate Commerce Commission has the power to establish qualifications and maximum hours of service for employees such as the plaintiffs in this case engaged in interstate commerce and that it has exercised such power. Accordingly the exemption contained in Section 13(b) (1) of the Fair Labor Standards Act applies to the plaintiffs in this case and they are excluded from the provisions of Section 7 of the same Act. The fact that the order of the Interstate Commerce Commission establishing such qualifications and maximum hours of service did not become effective until October 15, 1940, is immaterial. The determining factor in applying the exemption is whether or not the Interstate Commerce Commission "has power" to establish such qualifications and maximum hours of service. There is no question that since the plaintiffs in this case are engaged in interstate commerce that the Interstate Commerce Commission does have that power and, therefore, the exemption applies regardless of the time at which the Commission exercises such power.

Accordingly, the Court is of the opinion that on the basis of the second ground relied upon, the defendant's motion to dismiss the complaint herein should be granted. The said complaint is accordingly dismissed at plaintiffs' costs.

It is unnecessary in view of the foregoing to rule on the other pending motions of the defendant.