**RICHARDSON v. JAMES GIBBONS CO.**
No. 4964.

Circuit Court of Appeals, Fourth Circuit.
Dec. 26, 1942.

George A. Mahone, of Baltimore, Md.
(Wylie L. Ritchey, of Baltimore, Md., on
the brief), for appellant.

O. Bowie Duckett, Jr., of Baltimore, Md.
(Edward E. Hargest, Jr., and Alexius Mc-
Glannan, 3d, both of Baltimore, Md., on
the brief), for appellee.

Before PARKER, SOPER, and DOBIE,
Circuit Judges.

DOBIE, Circuit Judge.

This was a civil action instituted by Wil-
son Richardson (hereinafter called Richard-
son) as plaintiff, against The James Gib-
bons Company (hereinafter called Gibbons)
as defendant, for alleged overtime compen-
sation, for liquidated damages, and also for
a reasonable attorney's fee. These claims
were all based on the provisions of Section
16(b) of the Fair Labor Standards Act,
Act of June 25, 1938, 29 U.S.C.A. § 201
et seq.

628

The District Judge sustained a motion of the defendant Gibbons to dismiss the action, holding that Richardson was not within the scope of the Fair Labor Standards Act by virtue of the terms of Section 13(b) of the Act, 29 U.S.C.A. § 213(b) which reads: "The provisions of section 207 [of this title] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

Under the stipulation of facts filed in this case, "Richardson was employed by the Defendant Company from October 24, 1938, to September 4, 1940, as a distributor-operator and a truck driver. His duties consisted of distributing and hauling asphalt." Again, under the stipulation, according to the testimony of Richardson, he was employed, during the period in question "twenty-five per cent of the time as a truck driver and seventy-five per cent of the time as a distributor-operator"; while, according to the testimony of defendant, Richardson "was employed approximately thirty per cent of the time in distributing the asphalt and seventy per cent in transporting same."

The pertinent portions of the Motor Carrier Act are:

"Sec. 204 [§ 304]. (a). It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this part [chapter], and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this part [chapter], and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. · * * *."

In United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, it was held that Section 204(a) of the Motor Carrier Act applied only to those employees whose duties affect the safety of operation. We agree with the District Judge, in the instant case, that the duties of Richardson did affect the safety of operation. See Faulkner v. Little Rock Furniture Manufacturing Co., D.C., 32 F.Supp. 590; Bechtel v. Stillwater Milling Co., D.C., 33 F.Supp. 1010; West v. Smoky Mountain Stages, D.C., 40 F.Supp. 296; Robbins v. Zabarsky, D.C., 44 F.Supp. 867. See also, Hart v. Gregory, 218 N.C. 184; 10 S.E.2d 644, 130 A.L.R. 272; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1443.

Nor are we impressed by Richardson's contention that "whatever driving of the truck, or trucks (upon which the Distributor Tank and Mechanism were mounted) that he did was but incidental to his main employment of 'Distributor-Operator' " and that, therefore, he is within the provisions of the Fair Labor Standards Act, because "the Interstate Commerce Commission has not the power to establish for him, the plaintiff, qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935." See Rozmus v. Jesse T. Davis & Sons Co., 23 N.Y.S.2d 821 (truck driver and delivery man, who also performed services about the yard where employer's business was conducted); Gavril v. Kraft Cheese Co., D.C., 42 F.Supp. 702 (driver-salesman of cheese and food products). The case of State of Maryland v. Depew, 175 Md. 274, 1 A.2d 926, has a setting so different from the instant case that the decision there is not helpful to the plaintiff. And the fact that the contents of the truck or trucks driven by Richardson, were liquid asphalt products, which, counsel for Richardson admits in his brief, are "flammable and explosive", we think, brings his case even more clearly within the decision of the American Trucking Association's case, supra.

But a more serious question arises in this case. The District Judge, though he may have done so inferentially, did not, in granting the motion to dismiss, pass expressly upon the question. At that time the case of Bayley et al. v. Southland

Gasoline Co., 8 Cir., November 2, 1942, 131 F.2d 412, 413, had not been decided.

The period of Richardson's employment by Gibbons extended from October 24, 1938, until September 4, 1940. The defendant, Gibbons, qualified and has operated under the rules and regulations of the Interstate Commerce Commission since August 31, 1941. The Interstate Commerce Commission did not actually undertake the regulation of private motor carriers until May 1, 1940, when it made its finding that the regulation of private motor carriers was needed.

In the Bayley case, supra, the Circuit Court of Appeals for the Eighth Circuit, speaking through Circuit Judge Riddick, after setting out the relevant provisions of the Motor Carrier Act (given above) said: "It is apparent from a reading of the Motor Carrier Act that while the Congress determined for itself the necessity for the regulation of common and contract carriers by motor vehicle in the respects stated in the Act, it did not determine the necessity of regulating private carriers by motor vehicle, such as the appellee here, but left the determination of that question to the Interstate Commerce Commission, if, in the words of the Act, 'need therefor is found.' Obviously the three subsections of the Act, read together, clearly imply the intention of Congress that the power of the Commission with respect to private carriers should depend upon a finding by the Commission that the regulation was needed; that is to say, needed in the public interest in order to make effective regulation of common and contract carriers which Congress commanded, and to protect the public and the common and contract carriers from the consequences of unregulated competition by private carriers." Then, after discussing the intent and purpose of the Fair Labor Standards Act, Judge Riddick continued: "We hold that until the Interstate Commerce Commission made the finding of the necessity of the regulation of private carriers with respect to the matters specified in the Motor Carrier Act of 1935, it was without power to prescribe either qualifications or maximum hours for the employees of such carriers."

■ With all due deference, and all proper respect, for the learning and authority of that Court, we, regretfully, cannot concur in the correctness of its decision or in the validity of the reasons advanced for that decision. We think the interpretation given in the Bayley case to the Fair Labor Standards Act and the Motor Carrier Act overlooks the keen interrelation of these two statutes and defeats the intents and purposes which Congress had in mind.

We are fully aware that the Motor Carrier Act, § 204(a), gives absolute power to the Interstate Commerce Commission in paragraph (1) over common carriers by motor vehicle and in paragraph (2) over contract carriers by motor vehicle, while, as to private carriers of property by motor vehicle, there is in paragraph (3) the qualifying words "if need therefor is found." And such a finding is necessary before any affirmative and binding action can be taken by the Commission. Nor do we lightly brush aside the interpretation placed on the Fair Labor Standards Act by the Administrator in his Interpretative Bulletin No. 9. Yet we still think these considerations afford no valid basis for the Bayley decision.

■ The real question here is the meaning of the word "power" in Section 13(b) of the Fair Labor Standards Act. Congress, we think, meant the existence of the power not its actual exercise. The Fair Labor Standards Act was enacted after the Motor Carrier Act, and the later statute, we believe, intended to draw a line of cleavage between those cases on which the Interstate Commerce Commission could take action and those cases on which it could not. The restricted definition of the word "employee" in United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, would seem to lend color to this view, and, we think we find in that opinion a reflection of the philosophy of the Fair Labor Standards Act and the Motor Carrier Act to which we adhere.

■ We cordially agree with the opinion in the Bayley case that the Fair Labor Standards Act, as a remedial statute, must be liberally construed. This we developed at some length in Missel v. Overnight Motor Transportation Co., 4 Cir., 126 F.2d 98. But salus populi suprema lex esto and we should be equally careful not to restrict unduly any federal statute which, in the interest of public safety; undertakes to clothe the Interstate Commerce Commission with power to encompass so worthy an end. The vast importance of the private carrier of goods by motor vehicle is too well known to require comment. Congress must have appreciated this. We think, accordingly, that Congress was pretty well

convinced that the Interstate Commerce Commission would (as it did) make a finding of the necessity of regulating these carriers. Any other finding would have been little less than shocking to the American public.

The Bayley decision gives to coverage under the Fair Labor Standards Act a gap or hiatus in time, a kind of period of suspended animation to this same status of coverage. It makes certain employees subject to this Act and then, a moment later when the Interstate Commerce Commission has made the finding of necessity, the coverage of the Act suddenly ceases. We hesitate to think that Congress deliberately undertook to bring about such a situation, with all the pains, penalties and uncertainties thereunto appertaining. Again the Fair Labor Standards Act was never drawn with the idea of making a complete coverage of all employees engaged in interstate transportation. By its terms a number of exceptions are made, such as fishermen and farmers.

Our own researches, and those of counsel, have failed to turn up any decision of a Circuit Court of Appeals, with the exception of the Bayley case, passing directly on the instant question. Under these circumstances, we advert briefly to opinions in the federal District Courts, all of which buttress the stand we take in the instant case.

The District Judge in the Bayley case (overruled by the Circuit Court of Appeals) held expressly that the power of the Interstate Commerce Commission to regulate private carriers was not dependent upon a prior finding by the Commission that such regulation was necessary. In Faulkner v. Little Rock Furniture Manufacturing Co., D.C.E.D.Ark., 32 F.Supp. 590, 591, District Judge Trimble said: " * * * It appearing that under the provisions of Section 304(a) (3) [49 U.S.C.A.] Congress has delegated to the Interstate Commerce Commission the power to make regulations for qualifications and maximum hours of service for such employees, the whole field is occupied, and it further appearing that under the provisions of the Fair Labor Standards Act of 1938, as amended * * * the regulation of qualifications and maximum hours of service of employees 'with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service', have been exempted from the provisions of the Fair Labor Standards Act of 1938, there is and could be no reservation of power for the administrator of the Fair Labor Standards Act of 1938 to act until such time as the Interstate Commerce Commission shall see fit to act."

The first two head-notes to Bechtel v. Stillwater Milling Co., D.C.E.D.Okl., 33 F.Supp. 1010 (District Judge Vaught), read:

"Under Motor Carrier Act authorizing Interstate Commerce Commission to prescribe maximum hours of service of employees if need therefor is found, failure of commission to prescribe maximum hours of service of employees does not divest the commission of power granted to it by Congress. * * *

"Under Motor Carrier Act authorizing Interstate Commerce Commission to prescribe maximum hours of service of employees of private motor carriers, 'if need therefor is found', the quoted expression is a limitation on the commission in prescribing maximum hours of service but is not a limitation on the power granted by Congress to the commission."

In West v. Smoky Mountain Stages, D.C. N.D.Ga., 40 F.Supp. 296, 298, 299, District Judge Underwood stated: " * *. * The fact that the Interstate Commerce Commission may not have assumed jurisdiction over mechanics prior to this suit is immaterial. The exemption of employees from application of the Fair Labor Standards Act is not made, by Section 13(b) of the Act, [29 U.S.C.A. § 213(b)] to depend upon the exercise of power over them by the Interstate Commerce Commission, but merely upon the existence of 'power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 (304 of Title 49) of the Motor Carriers' Act'. The evidence in this case establishes the fact that the Interstate Commerce Commission has this power and that fact excludes jurisdiction of the Administrator over plaintiff's activities and the Fair Labor Standards Act was, therefore, not applicable in the plaintiff's situation and no cause of action is set forth in his petition."

Said District Judge Campbell in Gavril v. Kraft Cheese Co., D.C.N.D.Ill., 42 F.Supp. 702, 705: "Accordingly the exemption contained in Section 13(b) (1) of the Fair Labor Standards Act applies to the plaintiffs in this case and they are excluded from the provisions of Section 7 of the same Act.

The fact that the order of the Interstate Commerce Commission establishing such qualifications and maximum hours of service did not become effective until October 15, 1940, is immaterial. The determining factor in applying the exemption is whether or not the Interstate Commerce Commission 'has power' to establish such qualifications and maximum hours of service. There is no question that since the plaintiffs in this case are engaged in interstate commerce that the Interstate Commerce Commission does have that power and, therefore, the exemption applies regardless of the time at which the Commission exercises such power."

And District Judge Ford, in Robbins v. Zabarsky, D.C.Mass., 44 F.Supp. 867, 870, crisply held: "If the Interstate Commerce Commission has the power to fix maximum hours for a given employee, the Fair Labor Standards Act is not applicable to him, regardless of whether or not the Commission has exercised the power. That is the plain language of Section 13(b) (1) and the construction by the courts has followed it."

Also, compare the language of District Judge Barksdale in Magann v. Long's Baggage Transfer Co., D.C.W.D.Va., 39 F. Supp. 742, 749, 750, citing the Bechtel and Faulkner cases, supra.

The judgment of the District Court is affirmed.

Affirmed.