### WEST v. SMOKY MOUNTAINS STAGES, Inc.

#### No. 2319.

District Court, N. D. Georgia, Atlanta Division.

Aug. 5, 1941.

McLarty & Cooper, of Atlanta, Ga., for plaintiff.

Otis N. Pharr, of Lawrenceville, for defendant.

UNDERWOOD, District Judge.

The above case came on regularly for hearing on the merits and on oral motion to dismiss and was tried to the Court without a jury.

Petitioner sues, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover alleged unpaid overtime compensation amounting to $166.40, and for an additional equal amount of liq·idated damages and reasonable attorney's fees. He makes no claim for unpaid minimum wages, since his earnings were above the minimum wage provided in said Act.

### Findings of Fact.

Plaintiff was employed by defendant, a North Carolina corporation engaged as a common carrier in the operation of busses in interstate commerce. He was in defendant's employ from September 9, 1939, until June 8, 1940, though no recovery is sought for overtime subsequent to May 5, 1940.

Plaintiff was employed by defendant as a mechanic at a wage of $25 per week. Nothing was said at the time of employment about the number of hours per week to be worked and no records were kept either by plaintiff or defendant of the hours actually worked. Defendant did not do so because it considered plaintiff exempt under Section 13(b) of the Fair Labor Standards Act. Later, the Administrator of the Wage and Hour Division claimed jurisdiction under the Act and thereafter plaintiff's workweek was limited to forty (40) hours.

The evidence as to excess hours claimed to have been worked is very vague and indefinite and consists principally of estimates, there being no records of any kind to determine accurately what they were. Plaintiff claims to have reported for work (after the first two or three weeks during which he went to work at 8 o'clock A. M.), at 7 o'clock A. M., but the evidence as to this is not persuasive and it appears from plaintiff's own testimony that no one else came to work before 8 o'clock except a colored man who, plaintiff testified, came in about 7:30 A. M. Mr. Parker, who employed defendant, testified that he usually reported to work between eight and nine o'clock in the morning. A bus left the garage at 6:30 o'clock in the morning but plaintiff was never there when it left. The driver, who had a key to the garage, always opened the garage and got the bus out with plaintiff's aid. No other bus left until 11:15 A. M. The evidence as to the quitting time was equally vague and uncertain. Plaintiff testified that he remained until after the arrival of the bus scheduled to arrive at 6:50 P. M., and stayed on later if there was anything to do, and that, as a general rule, he left between seven and eight o'clock P. M. The evidence as to time off for lunch varied between twenty minutes to two hours. The evidence is not sufficiently definite and certain to support a finding of more than sixty (60) hours per week, and I therefore find that plaintiff worked sixty (60) hours per week during the period from September 9, 1939, to May 5, 1940.

Plaintiff was employed as a mechanic and his duties consisted principally of inspecting and repairing each bus that came in during his work hours, examining, adjusting and repairing the motor, lights, brakes and any other parts of the bus that needed attention or repair. The bus was usually gassed, oiled and cleaned by the colored man, but plaintiff sometimes helped him in case of hurry. About ninety per cent of the time worked by plaintiff from September 9, 1939, to May 5, 1940, was work upon busses preparing for eventual trips outside of the State of Georgia, and approximately ten per cent of his time was work upon busses not scheduled for trips outside of the State.

Safety of operation depends upon safe mechanical equipment as well as upon proper operation by human agencies. The care and repair of motors, lights, brakes, bearings and other appliances and parts of a motor bus, in an important manner affect the safety of operation of the bus, and I find from the evidence in this case that the activities of plaintiff, whose primary duties were to keep the motor vehicles in good and safe working condition, did affect the safety of operation of the busses which he inspected and repaired and which were being operated in interstate commerce.

298

### Conclusions of Law.

The question presented is whether or not plaintiff and defendant came within the coverage of the Fair Labor Standards Act.

They do come within the Act, unless plaintiff was an employee expressly exempted by Section 13(b) of the Fair Labor Standards Act, which provides: "(b) The provisions of section 7 [207] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 [304 of Title 49] of the Motor Carriers' Act of 1935." 29 U.S.C.A. § 213(b).

Section 204(a) (1) of Part II of the Motor Carriers' Act of 1935, 49 U.S. C.A. § 304(a) (1), provides: "It shall be the duty of the Commission * * * To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

It is now settled law that the meaning of the word "employees" in Section 204 of the Motor Carriers' Act just quoted "is limited to those employees whose activities affect the safety of operation. The Commission has no jurisdiction to regulate the qualifications or hours of service of any others." United States v. American Trucking Associations, 310 U.S. 534, 553, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345.

On the other hand, the Administrator has no jurisdiction under the Fair Labor Standards Act, if the activities of the employee does affect the safety of operation of interstate motor vehicles.

The question resolves itself, therefore, into an inquiry as to whether or not plaintiff was an employee whose activities affected the safety of operation of motor vehicles used in interstate commerce that he inspected and repaired.

The evidence in this case shows that plaintiff was employed by an interstate carrier and that his primary and chief duties required him to inspect, repair and keep in good condition motor busses used in interstate commerce, and that such activities did directly affect the safety of operation of such motor vehicles.

The fact, if it be a fact, that few accidents are caused by mechanical devices or lack of proper inspection and repair, does not prove that such mechanical work does not affect the safety of operation of the vehicle, but may, and I think does, mean as stated by the Interstate Commerce Commission itself, "that the carefully supervised work of skilled mechanics is a most important factor in the prevention of accidents, and therefore in the promotion of highway safety." (Ex Parte No. MC-2, In the Matter of Maximum Hours of Service of Motor Carrier Employees; Ex Parte No. MC-3, In the Matter of Need for Establishing Reasonable Requirements to Promote Safety of Operation of Motor Vehicles Used in Transporting Property by Private Carriers, decided March 4, 1941).

In this same report of the Commission, it held that: "The larger carriers, however do employ mechanics whose primary duties are to keep the motor vehicles in a good and safe working condition. They are required, for example, to keep the lights and brakes in such condition. They perform many other duties, of course, but these are sufficient to show clearly that the duties of these employees do affect safety of operation directly, as it is obvious that a large motor vehicle without the required lights or adequate brakes is a great potential hazard to highway safety."

Finally, the Commission in this report makes the finding of fact: "That mechanics employed by common and contract carriers and private carriers of property by motor vehicle, subject to part II of the Interstate Commerce Act, devote a large part of their time to activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce."

Aside from giving great weight to the findings of fact and conclusions of law reached by the Interstate Commerce Commission, which is charged especially with the administration of the Motor Carriers Act, I independently find as a fact that plaintiff's activities, as disclosed by the evidence in this case, did affect the safety of operation of busses moving in interstate commerce.

The fact that the Interstate Commerce Commission may not have assumed jurisdiction over mechanics prior to this

suit is immaterial. The exemption of employees from application of the Fair Labor Standards Act is not made, by Section 13(b) of the Act, to depend upon the exercise of power over them by the Interstate Commerce Commission, but merely upon the existence of "power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 [304 of Title 49] of the Motor Carriers' Act." The evidence in this case establishes the fact that the Interstate Commerce Commission has this power and that fact excludes jurisdiction of the Administrator over plaintiff's activities and the Fair Labor Standards Act was, therefore, not applicable in plaintiff's situation and no cause of action is set forth in his petition.

Whereupon, it is considered, ordered and adjudged that the said action be, and hereby is, dismissed.