[Civ. No. 12509. First Dist., Div. Two. Jan. 17, 1944.]

CARL B. HANSEN et al., Respondents, v. SALINAS VALLEY ICE COMPANY, LTD. (a Corporation), Appellant.

- Rosendale, Thomas & Muller for Appellant.

Stanley Lawson and Paul L. Pioda for Respondents.

NOURSE, P. J.—This was a suit by two employees of the defendant to recover minimum wages and overtime provided for by the Fair Labor Standards Act of 1938, 29 U.S.C.A.,

sections 201 et seq. The case was tried on an agreed statement of facts, and the trial court made findings and gave judgment in favor of plaintiffs. The defendant appeals from the judgment and presents two grounds of appeal: (1) that the agreed statement of facts does not support the finding that defendant corporation "was engaged in the manufacture and production of ice for interstate commerce," and (2) assuming for the purposes of argument that it was engaged in interstate commerce within the meaning of the act, the plaintiffs' rights were governed by the Motor Carrier Act, 1935, 49 U.S.C.A., sections 301 et seq.

The defendant was engaged in the manufacture and production of commercial ice. Over 85 per cent of the two plaintiffs' working time was spent in hauling ice from the ice plant to the buyers' packing sheds. At the buyers' packing sheds the ice was crushed and put in the tops of crates of vegetables, the remaining ice being put in the tops of the freight cars into which the crates of vegetables were loaded. Ninety-five per cent of these vegetables were shipped to consumers outside of the State of California.

The pertinent provisions of the Fair Labor Standards Act read as follows: Section 206(a) "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—"

Section 203(b) "'Commerce' means trade, commerce, transportation, transmission or communication among the several States or from any State to any place outside thereof."

Section 203(i) "'Goods' means goods . . ., but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

Section 213(b): "The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49. . . ."

In respect to the first point urged by appellant, it contends that the ice which was produced was delivered to the "ultimate consumer" when it was delivered to the buyers and hence was expressly exempted from the Fair Labor Standards Act by section 203(i); and that by reason of the delivery to the buyer who used the goods within the state these employees were not engaged in commerce or in the

production of goods for interstate commerce. The respondents assert that the manufacture of ice for the refrigeration of vegetables was essential to the interstate commerce in vegetables and constituted engaging in the production of goods for commerce within the meaning of the act.

In some of the early cases coming under the act an interpretation was put on its provisions in harmony with the contentions here made by the appellant. But the scope of the act in the area of operations here under controversy was set at rest in *Chapman* v. *Home Ice Co. of Memphis*, 136 F. 2d 353, where the authorities herein cited by appellant were either disapproved or overruled. As the decision is not readily available we quote at length from it as fully determining the question here raised:

"The issue in this appeal involves the coverage of the Fair Labor Standards Act of June 25, 1938, 29 U.S.C.A. sec. 201 et seq., and relates specifically to the employees of a Tennessee company producing ice of which a substantial portion is sold to railroad companies and merchants for refrigeration of perishable commodities moving in interstate commerce, and for refreshment of passengers on interstate trains. . . .

"We come then to the cases which deal with the production of ice for the purpose of refrigerating the cars of interstate carriers transporting perishable goods. In *Hamlet Ice Co.* v. *Fleming, supra,* [127 F.2d 165], it was pointed out that ice is clearly within the connotation of the word 'goods,' so that if produced with knowledge that its shipment, delivery, or sale in commerce is intended, and it is transported from state to state, the employees engaged in the production come within the scope of sec. 15(a)(1). Here, as there, it was claimed that the defendant's activities were outside the statutory scheme, because the goods in question are delivered within the state to the ultimate consumer and therefore fall outside the definition of 'goods' in sec. 3(i) of the Act. . . .

"It is contended that the railroad companies are here the ultimate consumers of the ice delivered to them within the state, so that the ice company produces nothing and sells nothing within the intendment of the Act. The identical argument was rejected in Hamlet Ice Co. case as unsound because the goods under consideration were not only the subjects of commerce but entered into the very means of transportation by which the burdens of traffic were borne, and that to exempt the producer would run contrary to the

manifest purpose of the Act to eliminate all sub-standard labor conditions in respect to goods produced for transportation in interstate commerce. With this reasoning we agree. . . . It is idle, therefore, to deny that the production of ice intended for refrigeration of perishable merchandise in transportation is not a necessary element of transportation, if, indeed, it is not also a 'part or ingredient' in production itself for ultimate consumer use. Moreover, as pointed out in the Hamlet case, the exclusion clause in sec. 3(i) is intended to apply to goods which have come into the hands of the ultimate consumer after transportation is ended, and after they have been withdrawn from further traffic or sale. The decision in *Atlantic Co.* v. *Walling, supra,* [131 F.2d 518], was reached by a parity of reasoning though pointing out, without deciding, that the non-inclusion provision of sec. 3(i) but exempts the ultimate consumer from the penalty of sec. 15(a) (1), and has no effect in limiting the scope of the Act as to the producer of goods intended for shipment in interstate commerce. In the light of these decisions and the admonition in *Overstreet* v. *North Shore Corporation,* 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. [656], decided February 1, 1943, that the Fair Labor Standards Act aims at protecting commerce from injury through adjustment of the master-servant relationship by eliminating sub-standard working conditions, we are constrained to hold that the employees of the appellee who were engaged in the production, transportation or delivery of ice intended for servicing interstate facilities were engaged in the production of goods for commerce.''

The Chapman case, supported as it is by sound reasoning and citation of numerous authorities, is controlling upon the first three questions stated by appellant relating to the application of the act to the activities of the parties as shown by the agreed statement of facts.

But appellant argues that, aside from these considerations, its employees are not governed by the act because of the provisions of the Motor Carrier Act of 1935. The pertinent provisions of the latter act are:

''Section 304(a) It shall be the duty of the Commission—

''(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment.''

"Section 303(a)(10) The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water. . . .

"(17) The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle,' who or which transports *in interstate or foreign commerce* by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent or bailment, or in furtherance of any commercial enterprise." (Emphasis ours.)

█ The scope of the act must be determined by the specific definitions found therein of "private carrier" and "interstate commerce." A private carrier is one who "transports in interstate or foreign commerce by motor vehicle." "The term 'interstate commerce' means commerce between any place in a State and any place in another State." The wider scope of the Fair Labor Standards Act is apparent (sec. 206(a)). "Every employer shall pay to each of his employees who is engaged in commerce or *in the production of goods for commerce.* . . ." (Emphasis ours.) Under the rule of the Chapman case (*supra*) the respondents come under the provisions of the Fair Labor Standards Act because they are engaged in the production of goods for commerce, and not because they are actually engaged in interstate commerce. The clear purpose of the Motor Carrier Act is to reach those employees engaged directly in the transportation of goods "in interstate or foreign commerce." It is very definitely confined to the motor carrier and its employees engaged in interstate transportation. It has no relation to the employer who carries his own goods from warehouse or place of shipment to other points within the state for sale and distribution. What is said in *Derer* v. *Snow Ice Co., Inc.,* 5 Labor Cases (C.C.H.) page 62,853, and *McDaniel* v. *Clavin,* *(Cal.App.) 128 P.2d 821, to the contrary is dicta, and all the language in the latter decision upon which appellant here relies was eliminated by the Supreme Court when the cause was transferred there for

---

*Hearing granted by Supreme Court.

hearing. In the final opinion (22 Cal.2d 61 [136 P.2d 559]) the Supreme Court confined its decision to the one question involved—that the employee's duties in taking the goods from the warehouse, transporting them to the employer's plant and then to the customers were not within the purview of the Fair Labor Standards Act. The facts of that case are widely different from what we have here where the employees are engaged directly ''in the production of goods for commerce'' as that phrase is interpreted in the Chapman case (*supra*).

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.