Say, Appellant, *v.* The Prior Oil Company.

630

Argued April 18, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Carmen V. Marinaro,* with him *William D. Markel,* for appellant.

*Lee C. McCandless,* with him *James E. Marshall* and *Marshall & McCandless,* for appellee.

OPINION BY RHODES, J., July 19, 1945:

Plaintiff brought this action in assumpsit under the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to recover from defendant overtime compensation, liquidated damages, and attorney fees. See 29 U.S.C.A. § 216. The trial resulted in a directed verdict in favor of defendant on the grounds that defendant was engaged in interstate commerce, and that plaintiff's employment by defendant came within the exemption contained in section 13 (b) (1) of the act, 29 U.S.C.A. § 213 (b) (1). Plaintiff's motion for new trial was overruled, and from the judgment he has taken the present appeal.

Appellant in his original statement of claim averred that he "was employed by the said defendant corporation to keep in repair a fleet of motor vehicles owned by and operated by the defendant corporation for the purposes of transporting in interstate commerce milk and petroleum products," and that he "performed the service of repairing the motor vehicles owned and operated by the defendant corporation for the purpose of transporting milk and petroleum products in interstate commerce and motor vehicles operated by others engaged in the transportation of goods in interstate commerce."

Defendant filed an affidavit of defense raising questions of law. Appellant moved to amend his statement of claim by striking out the entire paragraph containing the above averments, and substituting therefor the following: "The plaintiff was employed by the said defendant corporation as a motor vehicle repair mechanic . . . and performed the services of repairing motor vehicles operated by others engaged in the transportation of goods in interstate commerce." Defendant, in its affidavit of defense, admitted that appellant was employed by it, but denied that he performed the service of repairing motor vehicles operated by others, and in further answer thereto averred that it was engaged in interstate commerce and the employment of appellant was pertaining to trucks being operated in interstate commerce and directly affected the safety of said vehicles.

Appellant, in his testimony, obviously sought to avoid the establishment of the averments in his original statement of claim, but failed to prove the averment in the amended statement of claim to the effect that the services which he performed were on motor vehicles operated by others than defendant.[1] He testified that he was employed by defendant as a mechanic, and that 90

---

[1] Plaintiff testified, and defendant agreed, that the names on the trucks were for advertising purposes, and did not indicate ownership but merely denoted the products of various parties for whom hauling was done.

per cent of his time was spent in repairing trucks moving in interstate commerce. He further testified that he adjusted the brakes of these trucks, and made other repairs necessary for them to travel on the highway and to operate in safety in interstate commerce. On this state of the record, we think defendant's motion for nonsuit should have been granted. To establish his case appellant was required to prove more than the mere fact that he worked on trucks moving in interstate commerce. If they were the trucks of his employer who was engaged in interstate commerce by motor vehicle, he had no cause of action. The burden of proof was on appellant to make out his own case as pleaded; an intentional vagueness did not shift that burden.

This undisputed testimony offered by appellant was accepted by defendant whose evidence established that it was engaged in hauling milk in interstate commerce, and that the interstate trucks upon which appellant worked were owned and operated by defendant. There was documentary evidence that the trucks were owned by defendant. Defendant's evidence was in no way helpful to appellant's case, and did not conflict with the latter's testimony.

Appellant, in his argument, concedes that the evidence is uncontradicted, but contends that it brings his employment within the Fair Labor Standards Act of 1938. With this we do not agree, although we recognize · the purpose of the Fair Labor Standards Act.[2]

---

[2] "The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' Message of the President to Congress, May 24, 1934. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people": *Phillips, Inc., v. Walling,* 324 U. S. 490, 89 L. Ed. 705, 706.

In the first place, defendant was subject to part 2 of the Interstate Commerce Act, formerly, and herein, cited as the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., regardless of whether it was a common, contract, or private carrier.

The scope of the Motor Carrier Act is determined by the specific definitions found therein. *Hansen et al. v. Salinas Valley Ice Co.,* (Cal.) 144 P. 2d 896. The definitions provided in this act are as follows (49 U.S.C.A. § 303):

"(14) The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, except transportation by motor vehicle by an express company . . .

"(15) The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) and the exception therein) by motor vehicle of passengers or property in interstate or foreign commerce for compensation.

"(16) The term 'motor carrier' includes both a common carrier by motor vehicle and a contract carrier by motor vehicle.

"(17) The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle,' who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise."

In determining whether a carrier is subject to the provisions of the Motor Carrier Act respecting common and private carriers, ownership of the commodity trans-

ported is not the test, but the primary test is transportation for compensation; § 303 of this act (definitions) is remedial, and its terms are broad enough to include all those who, no matter what form they use, are in substance engaged in the business of interstate or foreign transportation of property on public highways for hire. *A. W. Stickle & Co. v. Interstate Commerce Commission,* 128 F. 2d 155, certiorari denied 317 U. S. 650, rehearing denied 317 U.S. 707. Nor need the motor vehicles operated actually cross state lines in order to confer jurisdiction on the Interstate Commerce Commission and exempt employees from the overtime provisions of the Fair Labor Standards Act, but it is necessary that the property transported in the trucks be interstate shipments. *Earle et al. v. Brink's Inc.,* 54 F. Supp. 676.

Secondly, the maximum hours and overtime provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 207, do not apply to plaintiff. Section 13 (b) (1), 29 U.S.C.A. § 213 (b) (1) provides: "The provisions of section 207 of this title [maximum hours and overtime provisions] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49." The Motor Carrier Act provides (49 U.S.C.A. § 304):

"(a) Powers and duties generally. It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and . . . the Commission may establish reasonable requirements with respect to continuous and adequate service, . . . and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle . . . and . . . may establish reasonable requirements with respect to . . . maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment."

In *Bechtel et al. v. Stillwater Milling Co. et al.*, 33 F. Supp. 1010, it was held that under the Motor Carrier Act authorizing Interstate Commerce Commission to establish for private carriers of property by motor vehicle reasonable requirements to promote safety of operation and to prescribe maximum hours of service of employees if need therefor is found and under the Fair Labor Standards Act providing that provisions should not apply with respect to any employee with respect to whom the Interstate Commerce Commission had power to establish qualifications and maximum hours of service, the power granted to the Interstate Commerce Commission is exclusive, and, by the exemption in the Fair Labor Standards Act, Congress recognized the power that had been granted to the commission.

The scope of the overtime exemption granted by section 13 (b) (1) depends upon a determination of the character of the duties of employees. The exemption extends, under the terms of the act, to those employees of common, contract, and private carriers with respect to whom the Interstate Commerce Commission has power to establish maximum hours regulations. This power, the Supreme Court of the United States has ruled, may be exercised only in the case of employees whose activities affect the safety of operations. *United States v. American Trucking Associations, Inc., et al.*, 60 S. Ct. 1059, 310 U.S. 534, 84 L. Ed. 1345, rehearing denied 61 S. Ct. 53, 311 U.S. 724, 85 L. Ed. 472. Shortly after this decision of the Supreme Court, the American Trucking Associations, Inc., et al. filed a petition asking the commission to determine which employees, if any, other than drivers, affect the safety of operation of motor vehicles. On March 4, 1941, the commission published a report in

Ex parte No. MC-2 and Ex parte No. MC-3 to the effect that mechanics, loaders, and drivers' helpers perform duties which affect the safety of operation of motor vehicles and are therefore subject to the commission's authority to prescribe the qualifications and maximum hours of service pursuant to section 204 (a) of the Motor Carrier Act, 49 U.S.C.A. § 304 (a). It does not appear that the commission has issued any regulation concerning maximum hours of service for mechanics, loaders, and drivers' helpers, although it has held hearings preparatory to such regulations. A further question was thus presented as to the date on which the exemption of employees over whom the commission "has power to" prescribe maximum hours of service became applicable. The basis of this question concerned the proper construction of section 204 (a) of the Motor Carrier Act (49 U.S.C.A. § 304 (a)) with respect to the time when the "power" of the commission to prescribe maximum hours came into being—whether upon enactment of the Motor Carrier Act or upon an actual finding by the commission that a need existed for regulation of hours of service. The employees referred to are those whose activities affect the safety of operation. Court decisions upon this point were conflicting, and this conflict in opinion culminated in directly opposite holdings by the United States Circuit Court of Appeals for the Eighth Circuit in *Bayley et al. v. Southland Gasoline Co.*, 131 F. 2d 412, and the United States Circuit Court of Appeals for the Fourth Circuit in *Richardson v. James Gibbons Co.*, 132 F. 2d 627. The Court of Appeals for the Eighth Circuit held that drivers for private carriers came within the exemption in section 13 (b) (1) only after May 1, 1940 (on this date the commission had issued an order that there was need to regulate qualifications and maximum hours of drivers of private carriers). The Court of Appeals for the Fourth Circuit held that a truck driver for a private carrier had always been within such exemption. These cases were appealed

to the United States Supreme Court, which, in a decision handed down on May 3, 1943, upheld the Court of Appeals for the Fourth Circuit finding that *employees* of motor carriers whose duties affect the safety of operation had been subject to the power of the commission with respect to hours of service since the enactment of the Motor Carrier Act, and the provisions in the act to the effect that the commission may establish maximum hours of service for employees of private carriers "if need therefor is found" is a condition precedent to the exercise, rather than the existence of such power. *Southland Gasoline Co. v. Bayley et al.,* 63 S. Ct. 917, 319 U.S. 44, 87 L. Ed. 1244.

In determining whether activities of a mechanic employed by an interstate motor carrier affect the safety of operation of motor vehicles used in interstate commerce, so that the mechanic would be within coverage of the Motor Carrier Act and not within the coverage of the Fair Labor Standards Act, great weight will be given to the report of the Interstate Commerce Commission holding that mechanics employed by common, contract, and private carriers devote a large part of their time to activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce. *West v. Smoky Mountains Stages, Inc.,* 40 F. Supp. 296, 298. Likewise, the interpretation expressed in bulletins of the division charged with the enforcement of the Fair Labor Standards Act are entitled to great weight. *United States v. American Trucking Associations, Inc., et al.,* supra, 60 S. Ct. 1059, 310 U.S. 534, 84 L. Ed. 1345. In *Tinerella et al. v. Des Moines Transp. Co., Inc.,* 41 F. Supp. 798, it was held that an employee of an interstate carrier by motor vehicle whose duties consisted of checking, inspecting, servicing, repairing, and generally maintaining trucks engaged in interstate commerce was one whose duties "affected safety of operation," and that such employee was not covered by the Fair Labor Standards Act. In *Wolfe v. Union Transfer & Storage Co.,* 48

F. Supp. 855, it was held that a mechanic employed by common carrier of freight by motor vehicle in interstate commerce to inspect and make such repairs as was necessary to put vehicles in property condition for safe operation was an employee with respect to whom the Interstate Commerce Commission had power to establish qualifications and maximum hours, and he was thereby excluded from benefits of the wage and hour provisions of the Fair Labor Standards Act notwithstanding that the Interstate Commerce Commission had not made such regulations during the time of the mechanic's employment. See, also, *West v. Smoky Mountains Stages, Inc.*, supra, 40 F. Supp. 296; *Robbins v. Zabarsky et al.*, 44 F. Supp. 867; *Keeling v. Huber & Huber Motor Express, Inc.*, 57 F. Supp. 617, 619.

Appellant's final contention is that the case in any event should have been submitted to the jury. He relies on *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523. In this connection it is also argued on his behalf that it was for the jury to determine whether he was engaged in interstate commerce, and whether he was employed by the defendant, the Prior Oil Company, or by the Prior Cartage Company. Appellant in his pleadings and in his testimony recognizes defendant as his employer, and the injection of the Prior Cartage Company is devoid of relevancy and lacking in consistency. It appears from defendant's testimony that its business is divided for accounting purposes, there being, inter alia, the Prior cartage account and the Prior restaurant account. There was nothing to indicate that there was in existence at the time a corporation by the name of the Prior Cartage Company engaged in the operation of interstate trucks.

We are of the opinion that the court below not having granted defendant's motion for a nonsuit properly directed a verdict in favor of defendant in this case. Accepting at its face value all of appellant's testimony, it raises no disputed questions of fact requiring submission

to the jury, and it fails to support his theory or material averment; the only question it presents is one of law. *Altman v. Standard Refrigerator Co., Inc.,* 315 Pa. 465, 482, 173 A. 411. Such facts as the testimony of appellant establishes are fully accepted by defendant. There is no requirement here that the credibility of appellant's uncontradicted testimony must be tested by a jury. *Evans v. Penn Mutual Life Ins. Co. of Philadelphia,* 322 Pa. 547, 558, 186 A. 133. Defendant concedes the facts which appellant has developed as true; under such circumstances the rule that where a plaintiff's case is based solely upon oral testimony, the truth of which is not admitted by the defendant, a verdict cannot be directed in favor of the plaintiff does not apply. *Brownsville Lodge No. 357, K. P., v. Great American Indemnity Co. et al.,* 128 Pa. Superior Ct. 553, 562, 194 A. 529. See, also, *American Surety Co. of New York v. Meadville Lodge, No. 219, B.P.O.E.,* 114 Pa. Superior Ct. 451, 463, 174 A. 591. Defendant's evidence merely corroborated appellant's failure to make out a case.

Assignments of error are overruled.

Judgment of the court below is affirmed.