James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

INDEPENDENT ICE & COLD STORAGE COMPANY, Inc., a Corporation, and Dan Arias, Defendants (two cases).

Civ. A. Nos. 3466, 3536.

United States District Court
S. D. Florida,
Tampa Division.

April 11, 1960.

Motion for New Trial Denied
May 10, 1960.

---

M. J. Parmenter, Birmingham, Ala., Harold C. Nystrom, Acting Sol., Washington, D. C., Beverley R. Worrell, Regional Atty., Oliver M. Cooper, Jr., Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Dixon, Flynn & Trigg, T. Paine Kelly, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendants.

WHITEHURST, Chief Judge.

These actions were instituted by James P. Mitchell, as Secretary of Labor, pursuant to Section 216, Title 29 U.S.C.A., authorizing him to sue on behalf of employees for alleged unpaid wages under the Fair Labor Standards Act. Although different employees and different periods of employment were involved in the two actions, the same were consolidated for trial before a jury by agreement of the parties.

One of the defenses asserted by both defendants in the pleadings and at pre-trial conference was a denial that the use plaintiffs had been engaged in commerce within the definition of that term as set out in the Fair Labor Standards Act. And in their statement of issues at the pre-trial conference, the defendants asserted that the evidence would reveal the existence of issues of law which have not been settled finally by the courts, requiring dismissal of the actions.

After the jury was duly empaneled, the plaintiff produced as witnesses variout owners of shrimp boats operating from the port of Tampa, and employees of two shrimp packing houses doing business in the city. It appeared from the testimony of these witnesses that defendant, Independent Ice & Cold Storage Company, sold large quantities of ice to the owners of shrimp boats for the purpose of icing their vessels. The ice was put through a blower which crushed the same and blew it into the holds of the vessels to prepare them for receiving their cargoes of shrimp. The vessels then proceeded from the port of Tampa to the fishing area, usually the Campeche grounds in international waters off the coast of Mexico, a distance of approximately 750 miles. When the vessel had made its catch and the shrimp was deposited in its hold, the vessel returned to the port of Tampa and the shrimp was marketed through the local packing houses. All of the ice blown into the hold of a vessel was consumed in the fishing operations and was never transported into any other state of the United States or into any foreign country, and never left the State of Florida except for the excursion of the vessel into international waters.

The employees of the packing concerns testified that their employers bought ice from the said defendants for their proc-

essing operations, and one of these witnesses testified to the manner in which the ice was used. It appears that the same was crushed and used to preserve the shrimp during a portion of the process by which they were prepared for market. First the shrimp were put through a grader which separated the various sizes, and then they were placed on large tables where they were peeled and veined. In both of these operations the crushed ice was sprinkled on the shrimp, keeping them at low temperature to prevent spoiling. All of the ice purchased from the said defendant was consumed in the operations performed in the grading, peeling and veining of the shrimp.

After the shrimp were prepared in the foregoing manner, they were placed in paper cartons according to size. No ice was placed in the carton with the shrimp, and no ice was used or came into contact with them after they left the peeling tables. The paper cartons were then conveyed to the freezers where they were quick frozen, still without use of ice. After the freezing process the boxes were made ready for shipment and ultimately a large percentage of them were sold and transported in interstate commerce.

There was no material dispute as to any of the foregoing facts and the same must be taken as true by the court.

The plaintiff also produced many of the employees for whose benefit the suit was brought and introduced testimony concerning the number of hours worked and the wages received. At the conclusion of the plaintiff's evidence the defendants severally moved for a directed verdict and for dismissal of the actions for lack of jurisdiction of the court over the subject matter under the provisions of that portion of the Fair Labor Standards Act designated as Section 216(c), Title 29 U.S.C.A., reading in part as follows:

"When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 206 or section 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim: Provided, That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled."

It was contended by defendants in support of their motions to dismiss the actions for lack of jurisdiction of the court over the subject matter that there is no decided case affording binding precedent for a decision of the question of coverage of the use plaintiffs by the act under the facts and circumstances shown by the evidence, and that this question of coverage constituted an issue of law which has not been settled finally by the courts.

### Findings of Fact

From the uncontroverted evidence it appears that the following facts are not disputed and must be accepted as true upon the record in the cause:

1. That during the period covered by these actions, the defendant, Independent Ice & Cold Storage Company, manufactured ice at its plant in the City of Tampa, Florida, and sold and delivered within the limits of said city a quantity of such ice for use in shrimp boats and in shrimp packing houses.

2. That the ice used in shrimp boats was blown into the holds of the vessels prior to their departure for the fishing grounds, located in international waters, and was used to preserve the catch during the fishing operations and on the return voyage to the port of Tampa, the ice being completely consumed in such use.

3. That the ice used in shrimp packing houses was sprinkled on the shrimp in the graders and on the peeling tables to preserve them until they were ready to be packed into paper cartons for transportation to freezers, the ice being entirely consumed in such use, and not

being placed in the cartons in which the shrimp were packed for freezing.

4. That after the freezing process a large percentage of the shrimp were prepared for shipment and were transported in interstate commerce.

5. That all of the said defendant's ice purchased by members of the shrimp industry was used merely to preserve the shrimp from the time they were caught until they were peeled and veined during the process by which they were prepared for freezing; that none of said defendant's ice was used to refrigerate the shrimp, or otherwise in connection with the processing thereof, after they left the peeling tables and during the final stages of their preparation for shipment and their transportation in interstate commerce.

6. That at no time was any of the ice sold by said defendant transported into any other state of the United States or into any foreign country, and none of said ice ever left the State of Florida except in the holds of vessels which went from the port of Tampa into international waters and thence returned directly to the said port.

### Conclusions of Law

1. That a determination as to whether or not employees of defendant, Independent Ice & Cold Storage Company, were engaged in "commerce" within the meaning of the Fair Labor Standards Act, in the manufacture and sale of ice under the circumstances set out above, involves an issue of law in the interpretation of the act.

2. That neither counsel for plaintiff nor counsel for defendant have cited to the court any decision of The Supreme Court of the United States or any of the circuit courts of appeal or any district court wherein the issue of law involved in a determination of the question of coverage by the Fair Labor Standards Act was resolved or decided on similar facts and circumstances.

3. That the issue of law involved in a determination of the question of coverage by the act under the facts and circumstances shown by the evidence has not been "settled finally by the courts" within the meaning of that term as set out in Section 216(c), Title 29 U.S.C.A.

4. That under and by virtue of the provisions of said section, the court is without jurisdiction of these actions because the same involve an issue of law not finally settled by the courts.

Submit form of order of dismissal and final judgment in each case.