James P. MITCHELL, Secretary of Labor, United States Department of Labor (Arthur J. Goldberg, Secretary of Labor, substituted as party appellant in the place and stead of James P. Mitchell, resigned), Appellant,

v.

INDEPENDENT ICE & COLD STORAGE COMPANY, Inc., and Dan Arias, Appellees.

No. 18569.

United States Court of Appeals
Fifth Circuit.

Aug. 16, 1961.

Bessie Margolin, Asst. Sol., Jacob I. Karro, Atty., Harold C. Nystrom, Acting Sol. of Labor, Jack H. Weiner, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.

T. Paine Kelly, Jr., Paull E. Dixon, Tampa, Fla., for appellees, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., of counsel.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The Secretary of Labor, as authorized by Section 16(c) of the Fair Labor Standards Act, as amended,[1] brought two actions, which were consolidated by the district court, seeking to recover unpaid minimum wages under Section 6 of the Act,[2] and for overtime compensation under Section 7 of the Act,[3] for thirteen employees and former employees of the corporate appellee, Independent Ice & Cold Storage Company, Inc., of which the individual appellee, Dan Arias, is president, general manager and principal stockholder. The appellees made the contention, among others, that the employees were not covered by the Act. At the close of the Secretary's case, the appellees made a motion to dismiss on the ground that the question of coverage presented an issue of law which has not been finally settled by the courts. The motion was granted and the actions were dismissed. The district court's findings and conclusions are reported in 183 F. Supp. 686. The Secretary has appealed from the judgment of dismissal.

The corporate appellee, Independent Ice & Cold Storage Company, Inc., here referred to as Independent, operates a plant in Tampa, Florida, for the manufacture of ice which it sells from its plant platform from commercial routes, and from substations, all in or in the area of Tampa. Independent also makes sales of ice to those in two phases of the shrimp industry. It sells approximately 7000 tons of ice per month to shrimp boats which fish from the Port of Tampa. This ice is hauled to the docks where it is crushed and blown into the holds of the shrimp boats. Each boat uses, on each trip, between 25 and 32 tons. The boats, with the ice on board, sail to the area of Campeche Bay about 750 miles away. The shrimp there caught are placed in the hold and iced. On the return of the boats, the ice has been consumed, the shrimp are unloaded, sold to distributors, and started on their way toward marketing. The round trip is usually of a duration of 40 to 50 days.

1. "When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 6 or section 7 of this [Act,] the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim: Provided, That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled." 29 U.S.C.A. § 216(c).

2. "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—
"(1) not less than $1 an hour; * * *"
29 U.S.C.A. § 206(a) (1).

3. "Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a work-week longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
* * *"
29 U.S.C.A. § 207(a).

Independent also sells, at irregular but frequent intervals, ice to shrimp packing houses which supplements ice procured by them from another source. It is used on the peeling tables to keep the shrimp cold while being peeled and graded. This ice is consumed in use. The shrimp, without ice, are removed from the peeling tables, packed in containers and then frozen. A large percentage of the shrimp so packed and frozen subsequently move in interstate commerce.

The district court determined that the question as to whether the employees of Independent, for whom the Secretary sued, were engaged in the "production of goods for commerce" within the meaning of the Act,[4] involved an issue of law which has not been settled finally by the courts. The correctness of the judgment, entered upon the district court's determination, is presented by the appeal.

It has been held that where employees of an ice manufacturer are engaged in making, selling and delivering ice to railroads and truckers for the refrigeration of goods while being shipped from one state to another, such employees are engaged in the production of goods for commerce even though it was entirely consumed in the course of its use. Atlantic Co. v. Walling, 5 Cir., 1942, 131 F.2d 518. See also Southern United Ice Co. v. Hendrix, 6 Cir., 1946, 153 F.2d 689; Chapman v. Home Ice Co. of Memphis, 6 Cir., 1943, 136 F.2d 353, certiorari denied 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454; Hamlet Ice Co. v. Fleming, 4 Cir., 1942, 127 F.2d 165, certiorari denied 317 U.S. 634, 63 S.Ct. 29, 87 L.Ed. 511; Hansen v. Salinas Valley Ice Co., 62 Cal.App.2d 357, 144 P.2d 896.

Independent asserts that there has been no trade, traffic or intercourse, that absent trading there is no commerce, and that the taking of a shrimp boat from port to a shrimp bed and returning to port with a catch is not within the meaning of commerce as defined by the Act. The district court agreed with this view, apparently, or determined that the law on the point was not settled. The Secretary insists that trading, traffic and intercourse are in no sense essential to commerce. There is, to be sure, no trading or trafficking of ice by the operator of the shrimper. Neither is there of the ice in the refrigerator car. Cf. Atlantic Co. v. Walling, supra. But there is a production of goods and those goods are transported upon a commercial venture and that transportation is commerce.

The shrimping expeditions carried the vessels far beyond the territorial limits of Florida. The acts and transactions, not being wholly within the State, are not subject to regulation as intrastate commerce by the State. It will not be supposed that such excursions are free from regulation. The power of the United States to require the registry or enrollment of vessels in the fishing trade [5] will not now be questioned. The operation of the Death on the High

4. "As used in the Act—

* * * * *

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C.A. § 203(b, i, j).

5. 46 U.S.C.A. §§ 221, 251.

Seas Act [6] is not limited to death resulting from injuries sustained on a vessel bound to or from a foreign port. Other examples of federal regulations of navigation, shipping and fishing might be cited. There has never been a slavish literalness in the determination of the power "To regulate Commerce with foreign Nations and among the several States." If there is commerce which involves the crossing of a State boundary it is subject to federal regulation. The Ninth. Circuit has held, in a criminal case brought under the Sherman Anti-Trust Act,[7] that fishing in the territorial waters of Southern California and Mexico and in the high seas falls into the rubric of interstate and foreign commerce, and the transportation of the catch to the fishing ports of Southern California was commerce. Local 36 of International Fishermen & Allied Workers of America v. United States, 9 Cir., 1949, 177 F.2d 320, certiorari denied 339 U.S. 947, 70 S.Ct. 801, 94 L.Ed. 1361. The District Court for the Southern District of Florida, the court of the origin of this case, decided, in a Wage and Hour case, that a shipyard and its employees were in commerce where a substantial part of its business was the making of repairs to boats used for fishing outside the Florida territorial waters and for taking tourist parties into the Gulf of Mexico and back to port. Walling v. Lowe, 5 W. H. Cases 937. See Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772. In recognition of the principle that there may be commerce without entering another state or a foreign nation after crossing a state boundary, Congress defined commerce as including acts and transactions not only "among the several States" but also "between any State and any place outside thereof." Here the shrimp vessels went from the Port of Tampa to the shrimp beds in the Bay of Campeche in the Gulf of Mexico, a place outside the State of Florida and returned from that place to the Port of Tampa. The employees of the Company who were engaged in the production of ice for the shrimp boats were engaged in commerce and subject to the coverage of the Act. The proviso which denies jurisdiction of an action involving an issue of law not settled finally by the courts was for the purpose of preventing the Secretary from bringing test cases involving new or novel questions of law. Conf.Rep.No. 1453, U.S. Code Congressional Service, 81st Cong., 1st Sess.1949, p. 2272. The facts here do not bring the case within the exclusionary proviso.

As to the ice used in refrigerating shrimp in the packing houses there are two questions, whether the ice used was "directly essential" to the production of goods for commerce, and if so, whether the quantity of ice so used is so negligible as to bring a rule of de minimis into operation. If these issues be resolved against Independent, the question will recur as to whether they have been settled finally by the courts. To sustain the district court's decision, Independent points to the 1949 amendment to Section 3(j) of the Act, 29 U.S.C.A. § 203(j), which changed the definition of "produced" so that instead of including "any process or occupation necessary to the production" of goods for commerce, the clause included *"any closely related process or occupation directly essential to the production thereof."* (Emphasis supplied). The amendment which, concededly, placed a further limitation upon the concept of production of goods and further restricted the coverage of the Act, excluded from coverage activities which Congress deemed too remote from commerce or too incidental to it. Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753; Mitchell v. Jaffe, 5 Cir., 1958, 261 F.2d 883.

Prior to the 1949 Amendment producers of electric power,[8] fuel,[9] and

6. 46 U.S.C.A. § 761 et seq.

7. 15 U.S.C.A. § 1 et seq.

8. Lewis v. Florida Power & Light Co., 5 Cir., 1946, 154 F.2d 751, Phillips v. Meeker Cooperative Light and Power Association, 8 Cir., 1946, 158 F.2d 698.

9. West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582.

water,[10] used by the purchaser in the production of goods for commerce, and their employees, were subject to the Act as being in occupations necessary to the production of goods for commerce. The Conference Report, supra, recited that it was intended that "employees of public utilities furnishing gas, electricity, or water to firms within the State engaged in manufacturing, producing or mining goods for commerce will remain subject to the Act. All the employees mentioned in this paragraph are doing work that is closely related and directly essential to the production of goods for commerce." U. S. Code Congressional Service, 81st Cong. 1st Sess., 1949, p. 2253. See Mitchell v. H. B. Zachry Co., supra. It is clearly apparent that the shrimp packers are engaged in the production of goods for commerce and that the manufacture and delivery of ice for the preservation by means of refrigeration of the shrimp while in process of production for commerce is closely related and directly essential thereto.

Independent furnished ice to the shrimp packers at regular and frequent intervals and in substantial amounts. It is immaterial that the ice so furnished was but a very small percentage of Independent's overall business. Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, Mitchell v. Hooper Equipment Co., 5 Cir., 1960, 279 F.2d 893; Mitchell v. Jaffe, supra; Tilbury v. Rogers, D.C.W.D.La.1954, 123 F.Supp. 109, affirmed Tilbury v. Mitchell, 5 Cir., 1955, 220 F.2d 757, certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748; Mitchell v. Royal Baking Co., 5 Cir., 1955, 219 F.2d 532. The de minimis doctrine which is applicable, if at all, only where deliveries of goods are sporadic and of insubstantial amounts, has no application here.

The reasons which we have for finding that there is no issue of law

which has not been settled finally by the courts with respect to ice furnished to the shrimp vessels are no less impelling as to the ice furnished to the shrimp packers.

It is our considered conclusion that the Secretary should have prevailed in his attempt to recover for the employees and former employees of Independent on whose behalf he sued if his proof sustains the claims he asserts. For further proceedings the judgment of the district court is

Reversed and remanded.

---

10. Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, rehearing denied 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513. Reynolds v. Salt River Valley Water Users Association, 9 Cir., 1944, 143 F.2d 863, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 611.